*In re* SPIER'S ESTATE.

1. WILLS—HUSBAND NOT A "RELATION" OF WIFE UNDER STATUTE.
   A devise and bequest to a husband under the will of his
   wife, who survived him, did not go to his issue, at her
   death, under the provisions of 3 Comp. Laws 1915, §
   13793, he not being a "relation" of the wife within the
   meaning of said statute.

2. SAME—CONSTRUCTION—"HEIRS AND ASSIGNS" WORDS OF LIMITA-
   TION.
   The use of the words "heirs and assigns" following a de-
   vise or bequest defines the estate given or granted, and
   does not designate the persons who should take by way
   of remainder unless an intent to create a life estate clearly
   appears.

3. SAME—LAPSED PROVISION.
   A provision for a husband in the will of his wife lapsed
   where his death occurred before hers, and no other dis-
   position of the gift was made under the will, and it did
   not pass to his heirs and personal representatives.

4. SAME—LAPSED BEQUEST PASSED INTO RESIDUE.
   Although the will of testatrix provided that the residue
   of her estate should consist of all her property "after
   taking out said specific bequests," contained in the second
   and third paragraphs, the provision in the second para-
   graph, which lapsed, passed into the residue, said words
   having no greater effect than if they had read "after pay-
   ment or satisfaction of the foregoing bequests," since
   residue is that which is left after satisfying the specific
   legacies and bequests.

5. SAME—INTENDMENTS PREVENT PARTIAL INTESTACY.
   All intendments are to be made to prevent a partial intestacy.

For the law governing the construction of will see note in
2 L. R. A. (N. S.) 443.
   On effect of restrictive words or reference to specific property
in residuary clause to limit scope of clause as regards lapsed
or ineffectual legacies and devises, see notes in 44 L. R. A. (N.
S.) 789; 10 A. L. R. 1522.
   As to who are relatives or relations entitled to take under will
according to statute of distribution, see note in 14 L. R. A. 342
28 L. R. A. (N. S.) 482.

Certiorari to Calhoun; North (Walter H.), J. Submitted June 6, 1923; reargued October 2, 1923. (Docket No. 42.)     Decided October 26, 1923.

Petition by Bessie Spier Ross, guardian of Marion and Duane Spier, minors, for an order of distribution of the estate of Alice V. Spier, deceased. The petition was granted in the probate court, and Charles C. Spier, executor, appealed to the circuit court. From a judgment affirming the order of the probate court, said executor brings certiorari. Reversed.

*Powers & Winkler* and *Burritt Hamilton,* for appellant.

*John W. Bailey,* for appellee.

SHARPE, J.   Alice V. Spier, of the city of Battle Creek, died on September 22, 1921, leaving a last will and testament, executed on September 6, 1918. The material parts thereof read as follows:

"*Second.* I give, devise, and bequeath to my dear devoted husband the house and lot located at No. 69 Chestnut street in said city of Battle Creek, described as the south two and one-half rods of lots 33, 34 and 35 of Merrit's addition to said city of Battle Creek, according to the recorded plat thereof, together with all my household goods, keepsakes and ornaments; it being my intention that this bequest shall be to my said husband, James P. Spier, and to his heirs and assigns forever, in addition to a further bequest hereinafter mentioned.

"*Third.* I give, devise and bequeath Marion and Duane Spier, children of my deceased son Roy, the sum of one thousand dollars to be divided equally between them, and in case of the death of one of them before this will becomes operative then said one thousand dollars shall go to the survivor, and in case of the death of both of said grandchildren before the will becomes operative, then said one thousand dollars shall become a part of my estate and be disposed of as hereinafter provided.

"*Fourth.* For the better information of those who may have charge of the settlement of my estate and in explanation of the purpose and meaning of the provisions of my will, I will and direct that after taking out the property mentioned in the second and third paragraphs above mentioned, that all of the rest, residue and remainder of my estate, both personal and real, wherever situate, shall be divided into five (5) equal parts, as I desire to divide such remainder equally between my husband and four children.

"*Fifth.* I will and direct that after taking out said specific bequests, that all of the rest, residue and remainder of my estate be divided between my husband. James P. Spier, my sons, Charles C. Spier, Howland M. Spier and Frank C. Spier, and my daughter, Minnie F. Clapp, equally, share and share alike. and to their heirs and assigns forever.

"*Sixth.* I further will and direct that in the event of the death of any or either of the persons mentioned in the fifth paragraph, before this will becomes operative, leaving a child or children, his or her share shall go to such surviving child or children, and if more than one child survives they shall share alike; and in the event of the death of any or either of said persons leaving no child surviving, then his or her share shall go to the surviving persons mentioned in said fifth paragraph, share and share alike."

At the time of her death she had four children living. Her husband had died on November 30, 1919. The question here presented is, What became of the devise and bequest to the husband? The probate court determined that it passed to the issue of the husband under the provision in section 13793, 3 Comp. Laws 1915, which reads as follows:

"When a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will, in the same manner as the devisee or legatee would have done, if he had survived the testator; unless a different disposition shall be made or directed by the will."

We were at first so impressed and handed down an opinion so holding, which was published in the advance sheets of the Northwestern Reporter (194 N. W. 490). (This opinion has been withdrawn from the files and will not appear in our official reports.) Whether the words "other relation," used in this section, included a husband was not briefed or discussed by counsel at the hearing. Our attention having been called to the fact that several State courts had held that a husband was not so included, we ordered a rehearing on our own motion. Such rehearing has been had. Counsel are agreed that on principle as well as authority we should hold that the word "relation," as used in this section, means kindred by blood only and excludes husbands, wives, stepchildren, and the like. We therefore content ourselves with calling attention to the authorities, and they seem to be uniform, so holding. *Esty* v. *Clark*, 101 Mass. 36 (3 Am. Rep. 320) ; *Horton* v. *Earle*, 162 Mass. 448, 450 (38 N. E. 1135) ; *Curley* v. *Lynch*, 206 Mass. 289, 292 (92 N. E. 429) ; *Worcester Trust Co.* v. *Turner*, 210 Mass. 115, 120 (96 N. E. 132) ; *Keniston* v. *Adams*, 80 Me. 290 (14 Atl. 203) ; *Cleaver* v. *Cleaver*, 39 Wis. 96 (20 Am. Rep. 30) ; *Sackman* v. *Campbell*, 10 Wash. 533 (39 Pac. 145).

Counsel for the appellee insists, as he did at the first hearing, that, by reason of the language used, the gift having been made to the husband "and to his heirs and assigns forever," there was no lapse; that the property passed to the heirs and personal representatives of the husband. To so hold, we must find that, had the husband survived his wife, he would have taken but a life estate, with remainder over to his heirs. The use of the words "heirs and assigns," following a devise or bequest as here made, has, we think, uniformly been held to define the estate given or granted, and not to designate the persons who

should take by way of remainder unless an intent to create a life estate clearly appeared.

"If the intention had been to devise an estate in fee simple the most apt and proper words would have been, 'I give and devise to Henry Casler, my son, his heirs and assigns forever.' " *Defreese* v. *Lake*, 109 Mich. 415, 418 (32 L. R. A. 744, 63 Am. St. Rep. 584).

"A gift to one 'and' his heirs, or the like, creates no substitutional gift, and if the donee dies before the testator there is a lapse." Rood on Wills, § 682.

"A gift 'to A. and his heirs' is simply a gift of the fee to A., for if A. dies before the testator the heirs of A. do not take." Remsen on the Preparation and Contest of Wills, p. 100.

"The technical words to create a fee are by a devise to one and his heirs, and the words 'heirs and assigns' are words of limitation and not of purchase." 2 Schouler on Wills (6th Ed.), § 1181.

"The word 'heirs' in such case gives the heirs no interest under the will, but it is merely a word of limitation, showing what interest the ancestor was to take in case he should survive the testator." 1 Underhill on Wills, p. 436.

We refrain from citing cases in support of this rule of construction. Many will be found in the notes inserted by the text-book writers and in 40 Cyc. p. 1519. The use of the word "and," preceding "to his heirs and assigns," has no significance. Some attorneys use it and others do not in instruments where the intention is to create an estate in fee simple. It is true that it is sometimes held to mean "or," to carry out the manifest intention of a testator or to prevent an absurd or unreasonable result. See note to *Janney* v. *Sprigg*, 48 Am. Dec. 557, 565 (7 Gill [Md.], 197).

We feel constrained to hold that the provision for the husband in the second paragraph of the will lapsed. The further question then presents itself,

Did the property therein described pass under the residuary clause, or did it become intestate property? The rule governing lapsed legacies and bequests is thus stated:

"At common law, while lapsed legacies fell into the residuum a lapsed devise of real estate did not go to the residuary devisee, but by the weight of modern authority a residuary devise carries to the residuary devisees all lapsed and void devises, at least where the will, as a whole, discloses an intention to dispose of the whole estate."     28 R. C. L. p. 341.

The common-law rule was dependent upon the holding that the will, as to the personalty, speaks from the death of the testator, while as to the realty it speaks from the time of the making of the will and a bequest of realty then made, even if it afterwards lapsed, could not have been intended to pass into the residue. In a note to *Galloway* v. *Darby*, 44 L. R. A. (N. S.), beginning at page 782 (105 Ark. 558, 151 S. W. 1014), the question is exhaustively discussed and the rule followed in the several States stated.

The writer says (page 799):

"In Michigan, where the rule prevails that a will speaks from the death of the testator, and the estate vests at that time unless the will contains some provision to the contrary, the doctrine is asserted that where the lapse is not in the residuary clause, lapsed gifts of both personal property and real estate pass under that clause."

This court has said:

"The law in regard to lapsed legacies of personalty has always treated them as part of the general body of the estate, so that they pass to the residuary legatees.  *  *  *  A lapsed legacy is in law the same as no legacy, for residuary purposes.   There is no law to the contrary."     *Mann* v. *Hyde*, 71 Mich. 278, 282.

"The lapse here was not in the residuary clause; and it is held that, where the lapse is not in the residuary

clause, lapsed gifts of both personal property and real estate pass under that clause." *Clark* v. *Mack*, 161 Mich. 545, 549 (28 L. R. A. [N. S.] 479).

It remains but to consider whether the will taken as a whole evidences a contrary intent. In 2 Jarman on Wills (6th Ed.), p. 1047, it is said:

"A presumption arises for the residuary legatee against every one except the particular legatee; for a testator is supposed to give his personalty away from the former only for the sake of the latter. It has been said that, to prevent a bequest of the residue from having this sweeping effect, very special words are required, and accordingly a residuary bequest of property 'not specifically given,' following various specific and general legacies, will include lapsed specific legacies."

In a note to *Hill* v. *Hill,* 149 Ga. 741 (102 S. E. 151), appearing in 10 A. L. R., beginning at page 1522, the general rule is thus stated:

"For the purpose of this note the general rule is assumed that a general residuary clause will carry ineffectual or lapsed legacies. In determining the devolution of lapsed legacies, the courts assume that, by the use of a general residuary clause, the testator evinced his intention not to die intestate as to any of his estate, real or personal. To overcome this presumption the residuary clause must contain language indicating that it was the intention of the testator to except and withdraw from the operation of the clause, the property he attempted to dispose of by a bequest or legacy, or the surrounding facts and circumstances must show such intention. In this regard the mere fact that the bequest or legacy was primarily for the benefit of some person other than the residuary legatee is not sufficient to show that the testator intended that if the legacy failed, it should inure to the benefit of the heirs or next of kin, rather than the residuary legatee."

It is supported by cases cited from State, Federal and foreign courts.

We find no language in the will which overcomes this presumption. Indeed, its several provisions, when read together, seem to support it. It seems apparent that the testatrix intended that the provision made for her grandchildren in the third paragraph was all that she intended they should have out of her estate. The seeming injustice to them will not permit us to construe this will other than is justified from a fair consideration of the language used and the rules of law applicable thereto. It is true that she provides in no uncertain terms that the residue of her estate shall consist of all her property "after taking out said specific bequests," contained in the second and third paragraphs of her will. Had not this language been used, the legal effect of the paragraph relating to the residue would have been the same. Residue is that which is left after satisfying the specific legacies and bequests. The words used are of no greater effect in indicating her intention than though she had said "after payment or satisfaction of the foregoing bequests."

"All intendments are to be made to prevent a partial intestacy. *Toms* v. *Williams*, 41 Mich. 552." *Des Grand Champ* v. *Duflo*, 169 Mich. 104.

In our opinion, the devise and bequest to the husband in the second paragraph lapsed and passed into the residue of her estate and must be distributed as therein provided for.

It follows that the order reviewed is reversed and set aside, with costs payable out of the estate.

Wiest, C. J., and Fellows, McDonald, Clark, Bird, Moore, and Steere, JJ., concurred.